[Cite as *In re Estate of Stockmaster*, 2012-Ohio-41.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY**

**IN THE MATTER OF:**

    **THE ESTATE OF**                 **CASE NO. 13-11-10**
    **STELLA R. STOCKMASTER,**

**[HAROLD STOCKMASTER, Executor of
the Estate of Stella R. Stockmaster, AND**      **O P I N I O N**
**RONALD SMITH, ESQ. - APPELLANTS].**

**Appeal from Seneca County Common Pleas Court
Trial Court No. 20071114**

**Judgment Reversed and Cause Remanded**

**Date of Decision: January 9, 2012**

**APPEARANCES:**

    *John A. Coble, Joseph F. Albrechta and Brad Culbert* **for
    Appellants**

    *James H. Ellis, III* **for Appellee, Harold J. Stockmaster**

    *Francis Stockmaster,* **Appellee**

    *Virginia Ruffing,* **Appellee**

**SHAW, J.**

{¶1} Appellants, Harold Stockmaster ("Harold"), executor of the estate of Stella Stockmaster, and Ronald Smith ("Attorney Smith"), attorney for the estate of Stella Stockmaster ("the estate"), appeal the February 28, 2011 judgment of the Common Pleas Court, Probate Division, of Seneca County, Ohio, determining the total amount of attorney's fees to be paid by the estate.[1]

{¶2} The decedent, Stella Stockmaster ("Stella"), died testate on November 20, 2006. At the time of her death, Stella was not married but was survived by her four children, Harold, Dorothy Hossler ("Dorothy"), Virginia Ruffing ("Virginia"), and Francis Stockmaster ("Francis"), each of whom were named as beneficiaries under various provisions of Stella's will. By far, the largest portion of the estate consisted of real property. According to the terms of this will, Harold and Dorothy were named as the co-executors of the estate.

{¶3} Upon his mother's death, Francis hired an attorney to represent him in the estate proceedings. Initially, this attorney filed an application in the Probate

---

[1] In the notice of appeal filed in this Court, Harold is named as an appellant in his capacity as executor for the estate, along with Attorney Smith, both of whom appear to be represented by the same counsel in this appeal. The sole assignment of error raises the issues that the amount of attorney fees chargeable to the estate is too low and is impermissibly capped. Thus, it appears that Harold, as executor, is contending that the estate should have to pay more in attorney's fees. However, "[i]t is well established in Ohio that an appeal lies only on behalf of a party aggrieved. Such party must be able to show that he has been prejudiced by the judgment of the lower court." *Love v. Tupman* (1969), 19 Ohio St.2d 111, 113, 249 N.E.2d 794; see, also, *Dawson v. Dawson*, 3rd Dist. Nos. 14-09-08, 14-09-10, 14-09-11, 14-09-12, 2009-Ohio-6029, ¶ 27. Certainly, the estate has not been aggrieved by an award of a lesser amount of attorney fees, which is also capped. Therefore, Harold, in his capacity as executor, has no legal interest in this appeal as an *appellant*.

Case No. 13-11-10

Division of the Erie County Common Pleas Court to probate Stella's will in that court. However, on April 13, 2007, Attorney Smith, who was retained by the co-executors to represent the estate, filed an application to probate the will in Seneca County, Ohio. Eventually, the probate case in Erie County was dismissed, and the estate action instituted in Seneca County proceeded.

{¶4} A number of claims against the estate were made, and both Harold and Dorothy filed motions to purchase a portion of the real property belonging to the estate. Some claims were allowed by the co-executors, some were rejected, and an inventory and appraisal of the estate's assets was filed. In addition, a computation of the fees of the co-executors in accordance with the provisions of R.C. 2113.35, which reflected a total amount of $9,799.73, was filed on September 14, 2007. On that same date, the co-executors also filed a computation of attorney fees for the estate, pursuant to Local Rule 71.4 of the Seneca County Probate Court, which reflected a total amount of $17,778.23.[2]

{¶5} Francis opposed Dorothy's motion to purchase a portion of the real property belonging to the estate because of her position as co-executor and because the will did not contain a provision that specifically permitted her to

---

[2] Local Rule 71.4 provides that the computation set forth in Appendix B-1 of the Rules is to serve "as a guide in determining fees to be charged to the estate for legal services of an ordinary nature rendered as attorney for the executor * * * in the complete administration of a decedent's estate. * * * SUCH SCHEDULES, HOWEVER, ARE NOT TO BE CONSIDERED AS SCHEDULES OF MINIMUM OR MAXIMUM FEES TO BE CHARGED, NOR WILL THEY BE AUTOMATICALLY APPROVED."

-3-

purchase any of the property, as it did for Harold. The trial court held a hearing on this matter, and on October 11, 2007, it overruled Dorothy's motion.

{¶6} In March of 2009, Francis filed a motion to compel Harold, as executor, to sell one of the parcels of property belonging to the estate. Shortly thereafter, Attorney Smith filed a memorandum on behalf of the estate opposing Francis' motion to compel. That same day, Attorney Smith also filed a motion on behalf of the estate to extend the time for filing an accounting in the estate because Dorothy was seriously ill, had been hospitalized, and lost her husband in late January, all of which necessitated additional time for her to complete the accounting.

{¶7} On September 4, 2009, Dorothy died. As a result, Attorney Smith filed a motion to have Harold appointed as the sole executor. After conducting a hearing on this matter, the trial court appointed Harold as the sole executor on December 4, 2009.

{¶8} In June of 2010, Attorney Smith filed a motion for extraordinary fees and attached an itemized statement of the number of hours and a description of the work he performed for the estate. On that same day, Harold, acting in his individual capacity, filed a motion for the trial court to permit him to purchase two of the parcels of real estate belonging to the estate, as provided in the will. Francis

opposed both motions, and a hearing was conducted by the trial court on these matters.

{¶9} At the conclusion of the hearing, the trial court found that it was unable to determine what attorney fees were for ordinary activities of the estate administration, for extraordinary fees of the estate administration, and for executor activities ordinarily conducted by the executor but that were conducted by Attorney Smith. Thus, the court ordered Attorney Smith to file additional information to assist the court in ascertaining these amounts and noted that it would set the matter for further hearing once the additional information was filed. In addition, the trial court denied Harold's request to purchase the two parcels of real property belonging to the estate.

{¶10} Harold timely appealed the trial court's judgment denying his request to purchase the real property belonging to the estate. While that matter was pending in this Court, Attorney Smith filed a "Notice of Filing", which contained the additional information requested by the trial court, delineating which fees Attorney Smith believed were ordinary (134.3 hours x $130.00/hr. = $17,459.00), extraordinary (186.7 hours x $130.00/hr. = $24,271.00), and which were incurred because he conducted activities normally performed by the executor (24 hours x $130.00/hr. = $3,120.00). The total amount sought by Attorney Smith totaled $44,850.00.

{¶11} A hearing was held on Attorney Smith's motion for extraordinary fees on December 15, 2010. At that time, Attorney Smith testified and submitted two exhibits in support of his motion. Virginia, who was unrepresented, cross-examined Attorney Smith but only asked questions regarding whether Attorney Smith had done anything to help resolve any of the problems surrounding Harold's attempt to exercise his option to purchase the real property belonging to the estate. Counsel for Francis did not cross-examine Attorney Smith, and no other testimony and/or exhibits were presented by Attorney Smith or any of the parties.

{¶12} During closing statements, Francis' attorney informed the trial court that he had no objection to the documents showing Attorney Smith's time and the nature of the work he performed in this case, specifically stating that Attorney Smith was a "fine attorney", that he had no concerns that Attorney Smith actually performed the work as described in the documentation, and that he should be compensated. (Hrg., 12/15/10, pp. 59, 62.) Nevertheless, counsel for Francis expressed his concern as to who should have to compensate Attorney Smith as he believed some of the matters Attorney Smith handled were issues between the beneficiaries and their respective attorneys, not matters for the estate to address. Counsel for Francis also raised concerns over the fees for duties of the executor that Attorney Smith performed because the entire amount of executor fees had already been determined and dispersed to Harold and Dorothy's estate and

apparently one or both of them did not entirely fulfill their obligations. Counsel for Francis did not provide the trial court with any specific amounts that he believed were not compensable from the estate or otherwise present any evidence contrary to the evidence presented by Attorney Smith.

{¶13} On February 28, 2011, the trial court rendered its decision on this issue. The court found that the following amounts were reasonable attorney's fees: $17,459.00 for ordinary fees, and $17,778.23 for extraordinary attorney's fees and fees for performing executor duties. The trial court further noted that three estate matters were not complete: (1) the issue regarding Harold's option to purchase the real property that was pending in this Court; (2) the sale/disposition of that property in a manner consistent with this Court's future decision; and (3) the final accounting of the estate. The trial court then ordered the estate to pay Attorney Smith $17,459.00 for his ordinary fees incurred to date and to pay Attorney Smith $17,778.23 as extraordinary fees after the filing of the final account and noted that this amount would represent the full payment for the remainder of Attorney Smith's fees for the completion of the entire estate.

{¶14} This appeal followed, and Attorney Smith now asserts one assignment of error for our review.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ARBITRARILY REDUCING APPELLANT'S ATTORNEY FEES AND BY EFFECTIVELY**

**CAPPING ALL FUTURE ATTORNEY FEES FOR SERVICES APPELLANT WILL RENDER TO THE ESTATE.**

{¶15} Revised Code section 2113.36 allows the estate to reimburse the executor for the cost of reasonable attorney fees. The burden of production on the issue of whether the attorney fees proposed to be paid by the estate are reasonable is upon the party seeking to obtain the fees. *In re Estate of Verbeck*, 173 Ohio St. 557, 558-559, 184 N.E.2d 384 (1962). The determination of whether the attorney fees are reasonable and the amount of those fees are matters within the probate court's discretion and will not be reversed on an appeal absent an abuse of that discretion. *In re Estate of Wirebaugh*, 84 Ohio App.3d 1, 5, 616 N.E.2d 245 (1992).

{¶16} Attorney fees in all matters are governed by the Rules of Professional Conduct, which provide:

> **(a) A lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee. A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. The factors to be considered in determining the reasonableness of a fee include the following:**
>
> **(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;**

**(2) the likelihood, if apparent to the client that the acceptance of the particular employment will preclude other employment by the lawyer;**

**(3) the fee customarily charged in the locality for similar legal services;**

**(4) the amount involved and the results obtained;**

**(5) the time limitations imposed by the client or by the circumstances;**

**(6) the nature and length of the professional relationship with the client;**

**(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;**

**(8) whether the fee is fixed or contingent.**

Prof. Cond. R. 1.5.

{¶17} In the present case, Attorney Smith testified as to the reasonableness of his fees and explained the contents of Exhibits 1 and 2, which listed all of the time he spent on matters related to the estate. These exhibits were also coded: items that were not underlined indicated that this was an ordinary activity on behalf of the estate, items that were underlined in red indicated that this was an extraordinary activity on behalf of the estate, and items that were underlined in blue indicated that this was an activity conducted by Attorney Smith for the estate that an executor would normally have performed.

{¶18} As previously noted, none of the beneficiaries questioned that Attorney Smith performed all of these activities or that these were reasonable attorney fees. The only issues were raised by counsel for Francis. These issues concerned (1) the fact that the co-executors were paid in full from the estate, a total amount in excess of $9,000.00, yet Attorney Smith fulfilled some of these duties and also sought payment from the estate for his performance and (2) that some of Attorney Smith's activities appeared to have been related to matters between the beneficiaries rather than on behalf of the estate. However, Francis did not indicate any specific items listed in the exhibits that he found to be questionable or otherwise provide a total amount that he thought were not chargeable to the estate.

{¶19} In its judgment entry as to the amount of attorney fees properly chargeable to the estate, the trial court found that a caustic relationship existed between the beneficiaries of the estate, which made the administration of the estate difficult and time consuming. The trial court also found that a high level of mistrust and dysfunction existed between the beneficiaries, which caused delays in the administration of the estate and "invariably led to [Attorney] Smith spending inordinate amounts of time and effort administering the Estate." The court further noted that there were multiple contested motions and hearings in the estate and

that the dispute regarding the option to purchase made the administration of the estate time consuming.

**{¶20}** The trial court then considered the factors provided in Prof. Cond. R. 1.5 and found as follows. As to the first factor regarding the difficulty of the questions involved in this case, although the court found that the issues presented did not exceed the knowledge or ability of an attorney of ordinary competence, the court found that the poor relationships of the beneficiaries, the death of one of the co-executors, and the dispute arising out of Harold's option to purchase the real estate caused Attorney Smith to expend substantial time and labor in his legal representation.

**{¶21}** As to the second factor regarding Attorney Smith's ability to accept other employment, the trial court noted that Attorney Smith testified that his representation of the estate limited his ability to pursue other clients' matters, but he presented no evidence as to any specific clients/matters that he was unable to handle because of the time he spent on this estate. As to the third factor regarding the customary fee charged in the area, the trial court noted that no expert testimony was presented about the customary fee for estates in Seneca County. Attorney Smith's exhibits reflected that he charged $130.00 per hour for each activity performed by him.

{¶22} As to the fourth factor regarding the amounts involved and the results obtained, Attorney Smith testified that he facilitated the sale of one tract of real estate and attempted to facilitate the sale of the remaining parcels. The trial court found that four years after Stella's death, a majority of the real estate had not been transferred, that the final account had not been completed, and that a substantial amount of Attorney Smith's time was spent negotiating and facilitating potential deals between the beneficiaries regarding the disputed option to purchase. The trial court found that there was no evidence regarding the fifth factor related to the time limitations imposed by the estate or by the circumstances.

{¶23} The trial court found in regards to the sixth factor, the nature and length of the professional relationship, that Attorney Smith was a neighbor and friend with Stella's family, that no fee agreement was ever entered into between the co-executors and Attorney Smith, and that Attorney Smith simply began working on the estate for the co-executors and tracked his time and activities. The trial court found this "troubling" because neither the co-executors nor the beneficiaries seemed to have any "meaningful concept" of what the attorney fees for the estate would be, which could have been prevented with a written fee agreement.

{¶24} The trial court found that the seventh factor, the experience, reputation, and ability of Attorney Smith, was shown through Attorney Smith's

"self-serving assertion that he is experienced, competent and reputable." Lastly, the trial court found as to the eighth factor regarding fixed or contingent fees, that there was no evidence of any such agreement between Attorney Smith and the co-executors.

{¶25} Based on these findings, the trial court allowed the amount requested by Attorney Smith of $17,459.00 for ordinary attorney fees but only allowed an additional $17,778.23 for extraordinary fees *and* attorney fees for executor duties to be paid to Attorney Smith upon the filing of the final account. This amount created a difference of $9,612.77 between the amount requested by Attorney Smith and the amount allowed by the trial court.[3] The trial court further ordered that this amount was to represent the full payment for the remainder of Attorney Smith's fees for the future completion of the estate, which was awaiting this Court's decision on Harold's option to purchase, the sale and/or disposition of the real estate once our decision was rendered, and a final accounting.

{¶26} While the trial court made a number of detailed findings to support its allowance of extraordinary fees, all of which were supported by the uncontroverted evidence before it, the court failed to provide any basis for

---

[3] In his brief to this Court, Attorney Smith noted that this was a difference of $8,806.77, based upon his request for a total amount of fees of $44,044.00. While this was the total amount originally requested in his June 3, 2010 motion for fees, in his notice of filing of November 19, 2010, and in his exhibits, Attorney Smith noted that he omitted 6.2 hours of time, which were also extraordinary fees, from his original request but had now included those hours in his fee request. These hours account for the $806.00 difference between Attorney Smith's brief to this Court and the exhibits submitted to the trial court.

reducing the amount of this allowance to the extent that it did. There is nothing evident from the record or from the trial court's findings that demonstrates in any way a basis for the trial court to conclude that only $17,778.23 was a reasonable amount for extraordinary fees and executor duties, particularly considering that none of the beneficiaries and/or the executor presented any evidence contrary to the documentation and testimony presented by Attorney Smith.

{¶27} Although the trial court may have made a reasoned and supported decision for reducing the amount requested by Attorney Smith, i.e. finding some activity and/or time spent to not be compensable or determining that $130.00 per hour for some and/or all items was an unreasonable amount, we simply are unable to determine and, therefore, can only guess at its rationale based upon the record and judgment entry before us. Thus, while the trial court's final dollar amount is specific, it is also, by definition, arbitrary because on its face it is a random amount that is neither consistent with the evidence in the record nor the findings made by the trial court. As such, we have no choice but to find that the trial court abused its discretion by simply setting a lump sum and unexplained amount of $17,778.23 for extraordinary fees and fees for executor duties.[4]

---

[4] We note that this figure is the same amount as the figure originally determined in September of 2007, by Local Rule 71.4 as the expected amount of *ordinary* attorney fees for the estate. This would appear to be the source of the trial court's total allowance for *extraordinary* fees. However, the fact that this may be the source of the dollar amount, thus rendering it less random, does not render this amount any less arbitrary in regards to the allowance of extraordinary fees in light of the record before this Court.

{¶28} In addition, we find that the trial court's purported decision to allow no future attorney fees despite the fact that Attorney Smith may be needed again to provide legal assistance in the administration of the estate, as there are still outstanding matters that must be addressed before the estate may be closed, is also an abuse of discretion. If Attorney Smith renders services to the estate after the date of his request for fees, the trial court is obligated to review any request for fees for such services to determine whether they are reasonable. See *In re Estate of Kendall*, 171 Ohio App.3d 109, 2007-Ohio-1672, 869 N.E.2d 728, ¶ 32. "To conclude summarily that no further fees will be considered, without first determining whether they are reasonable and necessary, is premature and constitutes an abuse of discretion." *Id*.

{¶29} For all of these reasons, the assignment of error is sustained, and the judgment of the Common Pleas Court, Probate Division, of Seneca County, Ohio, is reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**